IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| Jonathan McGlothian; Tracy McGlothian; The Mt. Olivet Group, LLC, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 3:18-cv-00507-REP |
| v. | ) | |
| | ) | |
| W. Heywood Fralin, in his official capacity as Chair of the State Council of Higher Education for Virginia; H. Eugene Lockhart, in his official capacity as Vice-Chair of the State Council of Higher Education for Virginia; Henry Light, in his official capacity as Secretary of the State Council of Higher Education for Virginia; Ken Ampy, Rosa Atkins, Marge Connelly, Victoria D. Harker, Stephen Moret, William Murray, Carlyle Ramsey, Minnis E. Ridenour, Tom Slater, and Katharine M. Webb, in their official capacities as members of the State Council of Higher Education for Virginia; and Peter Blake, in his official capacity as Director of the State Council of Higher Education for Virginia, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

This civil-rights lawsuit seeks to vindicate the right to teach job skills without first being required to obtain government permission. Plaintiff Jonathan McGlothian currently contracts with companies and military units to prepare their employees for project-management certification tests. Now, he would like to teach project management at his vocational school to

1

students solicited from the public. His wife, Plaintiff Tracy McGlothian, would like to teach

sewing classes there. But under Virginia's Vocational School Law, Plaintiffs cannot teach these

courses without first getting permission from the State Council of Higher Education for Virginia

("SCHEV"). This permission would require Plaintiffs to pay thousands of dollars in fees, fill out

dozens of pages of paperwork, and get government bureaucrats, who have no expertise in project

management or sewing, to approve their curricula.

SCHEV cannot constitutionally apply these requirements to Plaintiffs' classes. That is

because teaching (including teaching job skills) is speech, and Virginia's content-based

prohibition of Plaintiffs' project-management and sewing classes violates the First Amendment.[1]

## JURISDICTION AND VENUE

1.      Plaintiffs bring this lawsuit under the Civil Rights Act of 1871, 42 U.S.C. § 1983,

for violations of their rights under the First and Fourteenth Amendments of the United States

Constitution; 42 U.S.C. § 1988; and the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202.

2.      Plaintiffs seek declaratory and injunctive relief against enforcement of Va. Code

Ann. §§ 23.1-213 to -228 and 8 Va. Admin. Code §§ 40-31-10 to -320 (collectively, "Vocational

School Law").

3.      This Court has subject matter jurisdiction over Plaintiffs' constitutional claim

(Count I) under 28 U.S.C. §§ 1331 and 1343.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b) and Local Rule 3(c). All

Defendants operate in their official capacities within Richmond, Virginia, which is located in the

---

[1] Because Defendants have invoked sovereign immunity against the statutory claim in
Plaintiffs' original complaint, Plaintiffs have withdrawn that claim in this amended complaint
and withdrawn their request for a preliminary injunction as to that claim. Nothing in Plaintiffs'
amended complaint affects Plaintiffs' need for preliminary-injunctive relief as to their First
Amendment claim. Accordingly, Plaintiffs respectfully request that this Court decide Plaintiffs'
preliminary-injunction motion as soon as possible.

Richmond Division of the Eastern District of Virginia. 28 U.S.C. § 127(a). Moreover, on information and belief, all Defendants are domiciled in the Commonwealth of Virginia and at least four Defendants are domiciled in jurisdictions located within the Richmond Division of the Eastern District of Virginia.

## PARTIES

5.      Plaintiff Jonathan McGlothian is an adult resident of Virginia Beach, Virginia. Mr. McGlothian currently teaches project management through contracts with private companies and military units. Were it not for the Vocational School Law and SCHEV's interpretation of it, he would teach project management to students solicited from the public.

6.      Plaintiff Tracy McGlothian is an adult resident of Virginia Beach, Virginia. Ms. McGlothian is skilled in sewing and currently teaches students how to sew as a hobby. Were it not for the Vocational School Law and SCHEV's interpretation of it, she would teach students how to sew for a living, too.

7.      Plaintiff The Mt. Olivet Group, LLC ("TMOG") is a limited liability company organized in Virginia, with its primary place of business in Virginia Beach, Virginia. Were it not for the Vocational School Law and SCHEV's interpretation of it, the organization would, through its owners Plaintiffs Mr. and Ms. McGlothian, provide vocational education to students solicited from the public.

8.      Defendant W. Heywood Fralin is the Chair of SCHEV, the Commonwealth agency responsible for enforcing Virginia's Vocational School Law. Defendant Fralin is sued in his official capacity.

9.      Defendant H. Eugene Lockhart is the Vice-Chair of SCHEV and is sued in his official capacity.

10.     Defendant Henry Light is the Secretary of SCHEV and is sued in his official capacity.

11.     Defendants Ken Ampy, Rosa Atkins, Marge Connelly, Victoria D. Harker, Stephen Moret, William Murray, Carlyle Ramsey, Minnis E. Ridenour, Tom Slater, and Katharine M. Webb are the remaining council members for SCHEV and are sued in their official capacities.

12.     Defendant Peter Blake is the Director of SCHEV and is sued in his official capacity.

## FACTUAL ALLEGATIONS

**Plaintiff Jonathan McGlothian**

13.     Plaintiff Jonathan McGlothian is an expert in project management.

14.     Project management is a profession focusing on how to begin, plan, execute, and monitor projects, which are temporary endeavors undertaken to create a unique product, service, or result. For instance, the building of a bridge or the development of new software is a project. Instead of participating directly in bridge building or software programming, project managers work to maintain the progress, mutual interaction, and tasks of various parties to reduce the risk of failure, maximize benefits, and minimize costs.

15.     Many major companies, organizations, and government entities—including the Department of Defense—value project-management certification.

16.     In fact, the Program Management Improvement and Accountability Act—enacted in 2016—created a formal career path for project managers in the federal government.

4

17.     The largest certification body for the project-management profession is the Project Management Institute ("PMI"). PMI is a private-sector professional body with more than 472,000 members and 801,000 credential holders in over 30 countries.

18.     PMI's principal certification is the Project Management Professional ("PMP") certificate, which signals proficiency in project management.

19.     In order to earn PMP certification, candidates must pass a test consisting of 200 multiple-choice questions concerning various aspects of project management.

20.     In order to sit for the PMP certification test, candidates must have completed 35 hours of project-management education, and possess either: (a) a college degree and 4,500 hours of experience leading and directing projects; or (b) a high school diploma and 7,500 hours of experience leading and directing projects.

21.     After graduating from the United States Military Academy and serving in the Army, Mr. McGlothian acquired executive-level business and project-management experience at three companies between 1993 and 2010.

22.     In 1997, Mr. McGlothian earned a master's degree in business administration from the University of Memphis.

23.     In 2010, Mr. McGlothian earned a PMP certificate from PMI. Since then, he has managed several projects for corporate and government entities.

24.     After becoming a certified PMP, Mr. McGlothian wanted to share his knowledge of project management with others and, consequently, began teaching project management.

25.     Mr. McGlothian taught courses on project management and other business topics as an adjunct professor at East Coast Polytechnic Institute between 2012 and 2015 and at Tidewater Community College between 2015 and 2016.

26.     Mr. McGlothian also teaches project management through the company he co-founded with his wife Tracy—The Mt. Olivet Group, LLC ("TMOG"). TMOG is owned by him and his wife alone. Mr. McGlothian is TMOG's president.

27.     TMOG includes the TMOG Learning Center, which Mr. McGlothian manages.

28.     At the TMOG Learning Center, Mr. McGlothian prepares aspiring project managers for the PMP exam through a 35-hour course spread over five days of instruction. The course covers the five domains tested by the PMP exam: initiating projects; planning projects; executing projects; monitoring and controlling projects; and closing projects. Since PMI recognizes TMOG as a registered educational provider, PMP candidates can use this course to satisfy PMI's requirement that they complete 35 hours in project-management education.

29.     At the TMOG Learning Center, Mr. McGlothian also teaches courses titled "Project Management Fundamentals," "Project Management Essentials," "Practical Project Management Training," "Advanced Project Management Training," and "Leadership Skills," along with other courses on other business topics.

30.     In addition to preparing students for the PMP exam, Mr. McGlothian's courses at the TMOG Learning Center prepare students for other PMI certification exams, including tests to become a Certified Associate in Project Management ("CAPM") and Agile Certified Practitioner ("PMI-ACP").

31.     In addition to test preparation, Mr. McGlothian teaches other project-management classes at the TMOG Learning Center.

32.     In his classes at the TMOG Learning Center, Mr. McGlothian teaches his students terminology, concepts, and strategies used by project-management professionals.

33.     In his classes at the TMOG Learning Center, including his 35-hour course, Mr. McGlothian teaches project-management skills by lecturing groups of students, leading classroom discussions, and using PMI publications.

34.     Private employers—including Fortune 750 companies—have contracted with TMOG so that Mr. McGlothian could teach their employees project-management skills and qualify them for PMP certification.

35.     Military units have contracted with TMOG so that Mr. McGlothian could teach their officers project-management skills and qualify them for PMP certification.

36.     By contracting with entities, the TMOG Learning Center has taught more than 500 students, but it does not currently teach students solicited from the public.

37.     Mr. McGlothian wants to teach the TMOG Learning Center's project-management classes—including the 35-hour PMP test-prep course—to paying students solicited from the public.

38.     Having taught project-management classes at the TMOG Learning Center for seven years, Mr. McGlothian has already developed lesson plans for all his classes, and he would like to begin providing all of these classes to students solicited from the public. Numerous students have approached him and asked about whether they could take his classes directly.

39.     In order to teach project management to students solicited from the public, TMOG is currently renting commercial property in Virginia Beach for the TMOG Learning Center. However, Plaintiffs have not yet used this property for that purpose.

40.     The TMOG Learning Center has never offered degrees or college credit, accepted student loans, or received federal Department of Education funds for any of Mr. McGlothian's classes. Plaintiffs do not wish to offer college degrees or college credit, accept student loans, or

receive federal Department of Education funds for any of his future classes at the TMOG

Learning Center either.

**Plaintiff Tracy McGlothian**

41.     Plaintiff Tracy McGlothian is an experienced sewer with an undergraduate

business degree from Austin Peay State University and a master's degree in business

administration from Union University.

42.     Ms. McGlothian co-founded TMOG with her husband. She is TMOG's vice-

president.

43.     Ms. McGlothian manages Virginia Beach Sewing Solutions, which is a custom

sewing and embroidery operation within TMOG. In this role, she trains employees to use

commercial-grade sewing machines.

44.     Through TMOG, Ms. McGlothian teaches sewing classes, where she lectures and

provides practical demonstrations to teach students how to sew as a hobby. In total, she has

taught more than 400 students.

45.     Ms. McGlothian now wants to teach vocational sewing—along with classes in life

skills—at the TMOG Learning Center to paying students solicited from the public. In other

words, she would like to teach students how to sew for a living, rather than just as a hobby. And

she already has the lesson plans, materials, and classroom space she would need to do so.

46.     In order to teach vocational sewing to students solicited from the public, TMOG

is currently renting commercial property in Virginia Beach for the TMOG Learning Center.

However, Plaintiffs have not yet used this property for that purpose.

47.     The TMOG Learning Center has never offered college degrees or college credit,

accepted student loans, or received federal Department of Education funds for any of Ms.

McGlothian's classes. Plaintiffs do not wish to offer college degrees or college credit, accept student loans, or receive federal Department of Education funds for any of her future classes at the TMOG Learning Center either.

**Plaintiffs' Vocational School Runs into Regulatory Roadblocks**

48.     In order to learn about legal requirements for teaching students solicited from the public at the TMOG Learning Center, Mr. McGlothian attended a SCHEV orientation workshop for new schools in March 2016.

49.     In November 2016, Plaintiffs applied for SCHEV certification of the TMOG Learning Center as a "career technical" school.

50.     In their 2016 application to SCHEV for "new program approval," Plaintiffs proposed a 70-hour project-management program. The program consisted of three courses to be taught by Mr. McGlothian: TMOG's 35-hour PMP test-prep course; a course in "project management practical applications"; and a course in "project management essentials."

51.     In Plaintiffs' 2016 SCHEV application, Plaintiffs also told SCHEV that Ms. McGlothian sought to teach sewing, embroidery, and life-skill classes at the TMOG Learning Center, and that Mr. McGlothian planned to teach other project-management classes there.

52.     Plaintiffs' 2016 SCHEV application totaled hundreds of pages and Mr. and Ms. McGlothian spent more than 100 hours completing it.

53.     In applying for SCHEV certification in 2016, Plaintiffs paid SCHEV $2,500. Also, because SCHEV inspects schools' physical facilities before approving them, Plaintiffs rented commercial property for classroom space before applying. In total, Plaintiffs have spent more than $20,000 for this space's rent, furniture, and fixtures.

54.     In December 2016, SCHEV wrote to Plaintiff Mr. McGlothian demanding further information before Plaintiffs' application could proceed, including:

- an explanation regarding what adjunct positions Mr. McGlothian held at East Coast Polytechnic Institute and Tidewater Community College; and

- copies of official transcripts for Mr. and Ms. McGlothian;

- a copy of Mr. McGlothian's PMP certificate; and

- proof of Ms. McGlothian's experience and training in the subjects she sought to teach.

55.     In SCHEV's December 2016 correspondence with Mr. McGlothian, it attached a seven-page list of supposed deficiencies in Plaintiffs' application, including Plaintiffs' alleged failure to categorize their course offerings into correct numerical codes.

56.     In an attempt to satisfy SCHEV's December 2016 requests for information, Mr. McGlothian resubmitted Plaintiffs' SCHEV application on March 16, 2017 and included copies of his (and Ms. McGlothian's) college transcripts and his PMP certificate, along with other requested information.

57.     Plaintiffs' March 2017 SCHEV application totaled hundreds of pages and Mr. and Ms. McGlothian spent dozens of hours completing it.

58.     Nonetheless, SCHEV told Plaintiffs that their March 2017 application for SCHEV certification was still unsatisfactory.

59.     Discouraged by SCHEV's rejection of their March 2017 application for SCHEV certification, Plaintiffs withdrew from the application process.

60.     Even after SCHEV rejected Plaintiffs' March 2017 application, Plaintiffs still wanted to offer TMOG's 35-hour PMP test-prep course, and other courses preparing students for PMI certification tests, to students solicited from the public.

61.     In a letter and accompanying application to SCHEV dated September 27, 2017,

Mr. McGlothian sought an exemption from SCHEV certification on behalf of the TMOG

Learning Center under Va. Code Ann. § 23.1-226(B)(9), which provides that "[t]utorial

instruction delivered and designed to . . . prepare an individual for an examination for

professional practice or higher education," is not subject to regulation.

62.     In his September 27, 2017 letter to SCHEV, Mr. McGlothian explained that—

since the TMOG Learning Center provides project-management training to prepare students for

PMI certification tests, including the PMP—it was statutorily exempt from SCHEV's

certification requirements.

63.     In a letter to Mr. McGlothian dated October 30, 2017, and signed by SCHEV's

Assistant Director for Private Postsecondary Education Sandra Freeman, SCHEV denied the

TMOG Learning Center's application for SCHEV certification exemption.

64.     According to SCHEV's October 30, 2017 letter, "SCHEV considers professional

practice" connected to "achievement of a professional degree," which is "typified by completing

a rigorous education in a specific field that leads to licensure by a State Board[.]"

65.     As SCHEV explained in its October 30, 2017 letter, it acknowledges that law and

medicine are "professional practices" and that instruction preparing students for licensure in

these professions is consequently exempt from SCHEV's requirements.

66.     Yet, in its October 30, 2017 letter, SCHEV told Mr. McGlothian that the TMOG

Learning Center is "required to obtain a certificate to operate from SCHEV" in order to "offer

programs that prepare individuals for Project Management certification tests."

67.     In a letter to SCHEV dated November 29, 2017, Mr. McGlothian again sought a

statutory exemption from SCHEV certification on behalf of the TMOG Learning Center.

68.     In a letter to Mr. McGlothian dated December 18, 2017, and signed by Ms. Freeman, SCHEV again denied the TMOG Learning Center's application for certification exemption.

69.     In its December 18, 2017 letter, SCHEV again told Mr. McGlothian that the TMOG Learning Center is "required to obtain a certificate to operate from SCHEV" in order to "offer programs that prepare individuals for Project Management certification tests."

70.     After their struggles in 2016 and 2017, Plaintiffs no longer want to apply for a SCHEV certificate for the TMOG Learning Center. They believe they have a right to teach job skills without first obtaining government permission, and do not want to limit their teaching to programs SCHEV has approved.

71.     As a result of Plaintiffs' 2016 and 2017 communications with SCHEV, Plaintiffs have not taught job skills to students solicited from the public at the TMOG Learning Center. At the same time, Plaintiffs are paying rent on classroom space that they are not allowed to use for its intended purpose.

72.     If not for SCHEV's communications with Plaintiffs, and the Vocational School Law, Plaintiffs would currently be teaching PMI test prep, other project-management classes, and vocational sewing at the TMOG Learning Center to students solicited from the public.

**Virginia's Complex, Time-Consuming, Expensive, and Subjective Application Requirements Place Heavy Burdens on Speech**

73.     Virginia regulates private postsecondary schools through its Vocational School Law. "Vocational" programs communicate information intended to impart students with skills they can use to earn a living, whereas "avocational" programs are intended to teach students other skills, like hobbies.

74.     SCHEV has statutory authority to promulgate regulations for private postsecondary schools, and it enforces the Vocational School Law. Va. Code Ann. § 23.1-215; 8 Va. Admin. Code § 40-31-240.

75.     Under the Vocational School Law, "[n]o person shall open, operate, or conduct any postsecondary school in the Commonwealth without certification to operate such postsecondary school issued by [SCHEV]." Va. Code Ann. § 23.1-217(A).

76.     Under the Vocational School Law, "postsecondary school[s]" include vocational education. *See* Va. Code Ann. § 23.1-213.

77.     Avocational education is not subject to the Vocational School Law. *See* Va. Code Ann. § 23.1-213 ("'Postsecondary school' does not include avocational and adult basic education programs.")

78.     No school subject to the Vocational School Law may enroll students without obtaining SCHEV certification. *See* Va. Code Ann. § 23.1-219(A).

79.     Reading the Vocational School Law as a whole, Virginia generally requires private institutions to acquire SCHEV's permission before providing vocational education.

80.     Virginia does not require private institutions to acquire SCHEV's permission before providing avocational education, such as yoga classes.

81.     To obtain SCHEV certification, schools subject to the Vocational School Law must apply to SCHEV, which is tasked with evaluating schools for their compliance with the Vocational School Law. *See* Va. Code Ann. § 23.1-220.

82.     SCHEV may refuse to certify a school that "[f]ails to meet . . . compliance with" the Vocational School Law, "[v]iolates any provision of" the Vocational School Law, or "[f]ails

to furnish [SCHEV] with any requested information or records required" by the Vocational

School Law. *See* Va. Code Ann. § 23.1-221(A)(2), (4), and (5).

83.    SCHEV classifies postsecondary schools as either "institution[s] of higher

education" or "noncollege degree school[s]." *See* 8 Va. Admin. Code § 40-31-10.

84.    Noncollege degree schools include "career-technical" schools, which are

vocational schools that offer "only noncollege credit courses." *See* 8 Va. Admin. Code § 40-31-

10.

85.    The Vocational School Law contains exemptions for theological education,

continuing-education classes, nursing education, preparation for professional-practice and

higher-education tests, education designed to prepare students to teach a hobby, and several other

types of courses. *See* Va. Code Ann. § 23.1-226(B); 8 Va. Admin. Code §§ 40-31-40 to -60.

86.    Virginia does not a require a license to teach courses preparing law students for

the Virginia State Bar Exam or preparing medical students for the United States Medical

Licensing Examination.

87.    Virginia does not require a license to teach courses offered "solely on a

contractual basis for which no individual is charged tuition and there is no advertising for open

enrollment." *See* Va. Code Ann. § 23.1-226(B)(6). In other words, schools may teach vocational

courses—including Plaintiffs' project-management courses for military units and private

employers—if employers rather than students contract for them.

88.    SCHEV has interpreted the Vocational School Law to require that institutions

providing vocational education to students solicited from the public be certified by SCHEV as

"career-technical" schools before operating.

89.     SCHEV has repeatedly told Plaintiffs that the TMOG Learning Center must obtain SCHEV certification in order to legally teach its vocational programs—including preparation for PMI exams, other project-management education, and vocational sewing—to students solicited from the public.

90.     SCHEV has repeatedly told Plaintiffs that the TMOG Learning Center must comply with all the Vocational School Law's requirements for career-technical schools in order to legally teach its vocational programs—including preparation for PMI exams, other project-management education, and vocational sewing—to students solicited from the public.

91.     The Vocational School Law requires prospective career-technical schools to complete a burdensome and subjective application process and comply with a variety of regulations. These requirements and regulations include the following:

a)      Schools must submit a $2,500 application fee to SCHEV. *See* 8 Va. Admin. Code § 40-31-260(D).

b)      Schools must submit a surety instrument with SCHEV named as obligee in an amount equal to the total tuition they collect. *See* 8 Va. Admin. Code §§ 40-31-160(I), -180(B)(3).

c)      Schools must submit a "school-plan report" to SCHEV that provides a description of their institutional objectives, organization and governance, academic programs, completion requirements, admission requirements, administration, faculty, student services, library resources, physical facilities, financial resources, and market analysis. *See* State Council of Higher Educ. for Va., Directions for Preparing School Plan Report, www.schev.edu/docs/default-source/institution-section/pope/new-school-

certification-degree-granting/directions-for-preparing-school-plan-report517.pdf.

d)      Schools must convince SCHEV that their courses are of the "quality, content, and length" to achieve their "stated objective." *See* 8 Va. Admin. Code § 40-31-150(B).

e)      Schools must demonstrate to SCHEV that their class instructors hold an associate's degree in an area related to their area of instruction or "possess a minimum of two years" of experience in what SCHEV considers to be the "area of [their] teaching responsibility or a related area." *See* 8 Va. Admin. Code § 40-31-150(C).

f)      Schools must complete and submit to SCHEV an "[e]valuation" of their courses' "effectiveness" on a regular basis. *See* 8 Va. Admin. Code § 40-31-160(G).

g)      Schools must demonstrate that they have established a "clearly defined process" for reviewing their curricula. *See* 8 Va. Admin. Code § 40-31-160(G).

h)      Schools must either provide SCHEV with the results of an annual audit, reviewed or compiled financial statement, or fill out complicated accounting forms provided by SCHEV relating to their financial status. *See* 8 Va. Admin. Code § 40-31-160(H)(1).

i)      Schools are compelled to create and maintain records of all of their students' applications for admission and records of each student's progress. *See* 8 Va. Admin. Code § 40-31-160(E)(1).

16

j)      Schools must create transcripts for their students and contract with a third-party school or records-maintenance organization to preserve students' "transcripts" in the event the school closes. *See* 8 Va. Admin. Code § 40-31-160(E)(2).

k)      Schools must ensure that students have access to a library that SCHEV determines to be "adequate and appropriate" for their programs. *See* 8 Va. Admin. Code § 40-31-160(M).

l)      Schools must create publicly available documents, brochures, catalogs, and/or policies detailing their: history and development; mission statement and philosophy; purpose (and a statement demonstrating that their program offerings fulfill their stated purpose); student attendance and absence policy; expected student conduct; controlling ownership; student enrollment and completion statistics; student employment statistics; owners' and managers' powers, duties, and responsibilities; admission requirements; students' "rights, privileges, and responsibilities"; formal process for expressing grievances; financial-aid opportunities; program content and length; probation, dismissal, and re-admittance policies; "career advising" services offered; "faculty accessibility" policy; and other information. *See* 8 Va. Admin. Code § 40-31-160(B), (C), (D), (F), (J); *see also* State Council of Higher Educ. for Va., School Catalog Checklist, www.schev.edu/docs/default-source/institution-section/pope/new-school-certification-degree-granting/school-catalog-checklist517.pdf.

m)      Schools must allow SCHEV to conduct "random" audits of their programs

to verify compliance with Virginia's Vocational School Law. *See* 8 Va.

Admin. Code § 40-31-200(A).

n)      Schools must fulfill numerous other requirements set forth in SCHEV's

application for new schools or in the Vocational School Law.

92.     Additionally, SCHEV will not certify a school until it has conducted a physical

examination of its facilities, meaning that applicants must comply with all of the above

requirements and lease or purchase teaching space before they even know whether they will

receive SCHEV approval. *See* 8 Va. Admin. Code § 40-31-130(D).

93.     Violations of Virginia's Vocational School Law can be punished as a Class 1

misdemeanor, which carries a penalty of up to one year in prison and up to a $2,500 criminal

fine. *See* Va. Code Ann. §§ 18.2-11(a), 23.1-228(A); 8 Va. Admin Code § 40-31-230.

94.     Violations of Virginia's Vocational School Law are also punishable by a civil fine

of $1,000 per violation, up to a $25,000 maximum fine each year. *See* Va. Code Ann. § 23.1-

228(B).

95.     SCHEV has already aggressively enforced Virginia's Vocational School Law

against Plaintiffs. Shortly after Plaintiffs filed suit against Defendants, Sylvia Rosa-Casanova—

SCHEV's Director of Private Postsecondary Education—sent Plaintiffs an August 9, 2018 letter

incorrectly accusing them of currently running an illegal postsecondary school.

96.     Along with its August 9, 2018 letter to Plaintiffs, SCHEV included a copy of an

August 9, 2018 SCHEV letter to Virginia Beach's Commissioner of the Revenue, which

"request[ed] that the City of Virginia Beach revoke the business license issued to The Mt. Olivet

Group" and consequently stop Plaintiffs from operating the TMOG Learning Center.

97.     SCHEV's August 9, 2018 letter also threatened Plaintiffs with criminal charges and told Plaintiffs that SCHEV would refer their matter to the Virginia Attorney General's Office to institute a civil proceeding against them.

98.     SCHEV sent Plaintiffs its August 9, 2018 letter, requested that the Commissioner of Revenue revoke Plaintiffs' business license, and referred their matter to the Virginia Attorney General's Office to institute a civil proceeding against Plaintiffs even though SCHEV had not conducted any investigation to confirm whether Plaintiffs had violated Virginia's Vocational School Law.

99.     After Plaintiffs objected to these threats in an August 13, 2018 letter to Ms. Rosa-Casanova, Senior Assistant Attorney General Allen Wilson sent Plaintiffs' counsel an August 17, 2018 letter on SCHEV's behalf in which he claimed that SCHEV "was required" by statute to seek the revocation of Plaintiffs' business license. In the letter, Mr. Wilson said that, once SCHEV received "information/documentation showing" that Plaintiffs were "not operating in violation of SCHEV's regulations," SCHEV would "stop its enforcement procedures."

100.    Virginia Law does not require SCHEV to seek the revocation of the business license of a business that SCHEV merely suspects of being in violation of the law. Instead, Virginia law states that SCHEV must notify the Commissioner of Revenue "[u]pon confirmation" that a school is operating without certification or approval. Va. Code Ann. § 23.1-218(B).

101.    In response to Mr. Wilson's request for documentation that Plaintiffs were not violating the law, on August 20, 2018, Plaintiffs provided Mr. Wilson with sworn declarations that they do not offer classes to students solicited from the public and were therefore in compliance with the law.

19

102.     Despite Plaintiffs having provided this requested information, SCHEV did not immediately close the investigation or even inform the Commissioner of Revenue that SCHEV was conducting additional investigations to determine whether Plaintiffs' business license should be revoked. Instead, on August 22, 2018, SCHEV requested further information about statements on Plaintiffs' website.

103.     SCHEV did not rescind its threats against Plaintiffs or inform Virginia Beach's Commissioner of Revenue that Plaintiffs were in compliance with the law until August 28, 2018. Thus, for nearly three weeks, Plaintiffs endured the stress and worry that their business license would be revoked based on SCHEV's false suspicions that Plaintiffs were violating the law.

104.     On information and belief, it is not SCHEV's standard practice to seek the revocation of the business license of a business that SCHEV merely suspects of being in violation of the law without first conducting additional investigation to confirm a violation.

**Injury to Plaintiffs**

105.     Requiring Plaintiffs to obtain SCHEV permission to teach job skills to students solicited from the public violates Plaintiffs' rights under the First Amendment.

106.     Requiring Plaintiffs to meet all of the regulatory requirements for a SCHEV-certified career-technical school in order to open the TMOG Learning Center to students solicited from the public violates Plaintiffs' rights under the First Amendment.

107.     Plaintiffs estimate that attempting (again) to obtain permission to speak from SCHEV under the Vocational School Law, and fully complying with SCHEV's burdensome application procedures, would cost several thousand dollars and take dozens of hours of work.

108.     These costs, in time and in money, are imposed on Plaintiffs solely because of the nature and content of their speech. If Plaintiffs taught subjects other than job skills, or if they

taught jobs skills that are statutorily exempt from the Vocational School Law, Plaintiffs would not face these costs.

109.    The Vocational School Law places unbridled discretion in SCHEV to approve or reject applications for new schools, in violation of Plaintiffs' rights under the First Amendment.

110.    Through TMOG, Mr. McGlothian currently teaches project management—including preparation for PMI exams and other classes—to companies and military units that contract directly with TMOG.

111.    Through TMOG, Ms. McGlothian currently teaches avocational sewing classes.

112.    Plaintiffs wish to provide vocational education—including preparation for PMI exams, other project-management classes, and vocational sewing—at the TMOG Learning Center to students solicited from the public, but SCHEV will not let Plaintiffs do so without meeting its requirements for career-technical schools.

113.    Plaintiffs do not want to apply again to have the TMOG Learning Center certified by SCHEV as a career-technical school, nor do they want to be forced to choose between completing SCHEV's expensive and burdensome application procedures and committing a crime.

114.    Were it not for the Vocational School Law and SCHEV's interpretation of it, Plaintiffs would currently be providing vocational education—including preparation for PMI exams, other project-management classes, and vocational sewing—at the TMOG Learning Center to students solicited from the public.

115.    SCHEV's prior restraint on Plaintiffs' speech has deprived—and continues to deprive—prospective students of useful information.

116.    If this Court enjoined Defendants from enforcing the Vocational School Law against Plaintiffs, Mr. McGlothian would teach project management—including both preparation for PMI exams and other classes—at the TMOG Learning Center to students solicited from the public.

117.    If this Court enjoined Defendants from enforcing the Vocational School Law against Plaintiffs, Ms. McGlothian would teach vocational sewing at the TMOG Learning Center to students solicited from the public.

118.    Plaintiffs are concerned and afraid that teaching job skills at the TMOG Learning Center to students solicited from the public would subject them to severe criminal and civil penalties.

119.    Defendants' actions have created a doubt that requires a resolution by this Court regarding Plaintiffs' right to communicate.

120.    Without a declaration regarding the constitutionality of requiring Plaintiffs to obtain SCHEV certification before providing vocational education—including preparation for PMI exams, other project-management classes, and vocational sewing—to students solicited from the public, Plaintiffs are concerned that SCHEV would consider this instruction illegal, even though such enforcement would violate the First Amendment.

121.    If this Court declared that requiring Plaintiffs to obtain SCHEV certification before providing vocational education was unconstitutional, the declaration would clarify Plaintiffs' rights and conclusively determine whether they could teach job skills—including preparation for PMI exams, other project-management classes, and vocational sewing—to students solicited from the public.

**Lack of Foundation for Virginia's Requirements**

122.   Defendants do not have a compelling or sufficiently important justification for infringing Plaintiffs' right to teach job skills.

123.   Any government interests purportedly advanced by requiring the TMOG Learning Center to obtain SCHEV approval—conditioned on satisfying all applicable SCHEV requirements—could be advanced equally effectively by any number of less-restrictive alternatives.

124.   Upon information and belief, Virginia has no evidence that requiring the TMOG Learning Center to satisfy all of SCHEV's requirements advances any compelling or sufficiently important government interest.

125.   Upon information and belief, Virginia has no evidence of harms that would arise if the TMOG Learning Center did not need to satisfy all of SCHEV's requirements.

126.   If Defendants were enjoined from enforcing the Vocational School Law against Plaintiffs, Defendants stand to suffer no harm—there is no risk of financial harm to them because an injunction would not compel them to take any action or obligate any resources.

<u>**COUNT ONE**</u>

**(Freedom of Speech)**

127.   Plaintiffs incorporate and re-allege each and every allegation contained in Paragraphs 1 through 126 of this Complaint as if fully set forth herein.

128.   The First Amendment to the United States Constitution, incorporated against Virginia via the Fourteenth Amendment, protects Plaintiffs' right to talk about project management, sewing, and other job skills.

129.   Teaching is speech and is protected by the First Amendment.

130.     Because Plaintiffs wish to teach job skills, including project management and professional sewing, to paying students solicited from the public, SCHEV requires them to apply for a license, which costs thousands of dollars and takes dozens of hours.

131.     If Plaintiffs instead sought to teach yoga, or other avocational skills, to paying students solicited from the public, SCHEV would not (and could not) require them to apply for a license.

132.     Burdening Plaintiffs for speaking about project management, or professional sewing, rather than other topics, is a content-based restriction on speech.

133.     Burdening Plaintiffs for teaching job skills, rather than avocational skills, is a content-based restriction on speech.

134.     Requiring Plaintiffs to obtain a SCHEV license before teaching students solicited from the public is an unconstitutional burden on Plaintiffs' speech.

135.     Requiring Plaintiffs to pay substantial fees and spend dozens of hours working to comply with SCHEV's regulations before teaching students solicited from the public is an unconstitutional burden on Plaintiffs' speech.

136.     SCHEV does not have sufficient justification for its infringement on Plaintiffs' right to teach job skills.

137.     Plaintiffs have no other adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

138.     Unless Defendants are enjoined, Plaintiffs will continue to suffer irreparable harm.

139.    Defendants' actions harm the public interest by depriving the public of additional and desired options in the marketplace, such as the option of attending the TMOG Learning Center directly. Unless Defendants are enjoined, the public will continue to suffer this harm.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request relief as follows:

A.    An entry of judgment declaring that, facially and as applied to Plaintiffs and others like them, the restrictions and enforcement preventing Plaintiffs from teaching job skills to students solicited from the public violate the First and Fourteenth Amendments to the United States Constitution;

B.    A preliminary injunction prohibiting Defendants and their agents from: (i) requiring Plaintiffs to obtain SCHEV certification before teaching job skills to students solicited from the public; (ii) requesting that The Mt. Olivet Group's business license be revoked; or (iii) referring Plaintiffs to Virginia's Attorney General's Office for any civil or criminal proceeding related to the Vocational School Law;

C.    A permanent injunction prohibiting Defendants and their agents from: (i) requiring Plaintiffs to obtain SCHEV certification before teaching job skills to students solicited from the public; (ii) requesting that The Mt. Olivet Group's business license be revoked; or (iii) referring Plaintiffs to Virginia's Attorney General's Office for any civil or criminal proceeding related to the Vocational School Law;

D.    An award of attorney's fees, costs, and expenses under 42 U.S.C. § 1988; and

E.    Such further legal and equitable relief as the Court may deem just and proper.

DATED this 31st day of August, 2018.


Respectfully submitted,

/s/ Paul M. Sherman
Paul M. Sherman
Virginia Bar Number 73410
Milad Emam
Virginia Bar Number 83861
Attorneys for Jonathan McGlothian,
          Tracy McGlothian, and
          The Mt. Olivet Group, LLC
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: psherman@ij.org, memam@ij.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 31st day of August, 2018, Plaintiffs served a copy of

this PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DECLARATORY AND

INJUNCTIVE RELIEF on the following counsel of record via the Court's CM/ECF system,

which will automatically send email notification of such filing:

> Sandra S. Gregor
> W. Ryan Waddell
> Assistant Attorney General
> Office of the Attorney General of Virginia
> 202 North 9th Street
> Richmond, VA 23219
> Tel:  (804) 786-1586; (804) 786-1748
> Fax:  (804) 371-2087
> E-mail: sgregor@oag.state.va.us;
> wwaddell@oag.state.va.us
>
> *Attorneys for Defendants W. Heywood*
> *Fralin, H. Eugene Lockhart, Henry Light,*
> *Ken Ampy, Rosa Atkins, Marge Connelly,*
> *Victoria D. Harker, Stephen Moret,*
> *William Murray, Carlyle Ramsey, Minnis*
> *E. Ridenour, Tom Slater, Katharine M.*
> *Webb, and Peter Blake*

> /s/ Paul M. Sherman
> Paul Sherman
> Virginia Bar Number 73410
> Milad Emam
> Virginia Bar Number 83861
> Attorneys for Plaintiffs
> INSTITUTE FOR JUSTICE
> 901 North Glebe Road, Suite 900
> Arlington, VA 22203
> Telephone: (703) 682-9320
> Fax: (703) 682-9321
> Email: psherman@ij.org; memam@ij.org
>
> *Attorneys for Plaintiffs Jonathan McGlothian,*
> *Tracy McGlothian, and The Mt. Olivet Group,*
> *LLC*

27